# IN THE COURT OF APPEALS OF IOWA

————————————

No. 26-0245
Filed June 24, 2026

————————————

**In the Interest of D.L., Minor Child,**

**O.L., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Polk County,
The Honorable Susan Cox, Judge.

————————————

**AFFIRMED**

————————————

ConGarry Williams, Assistant Public Defender, Des Moines, attorney for
appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Lisa Allison of Youth Law Center, Des Moines, attorney and guardian ad
litem for minor child.

————————————

Considered without oral argument
by Greer, P.J., Buller, J., and Vogel, S.J.
Opinion by Greer, P.J.

**GREER, Presiding Judge.**

A mother appeals the termination of her parental rights to D.L., born in 2024.[1] She argues that termination is not in the child's best interests. Upon our de novo review, we affirm.

## I. Background Facts and Proceedings.

In April 2024, the Iowa Department of Health and Human Services (HHS) first became involved with the family due to concerns about the child's older sibling. The mother was experiencing auditory hallucinations and required inpatient mental-health treatment, leaving the older sibling without a caretaker. The older sibling was removed from the mother's custody and placed in foster care. When D.L. was born, there was an open child-in-need-of-assistance (CINA) case for the older sibling. The juvenile court eventually terminated the mother's rights to the older sibling, which we affirmed on appeal. *In re L.L.*, No. 25-1997, 2026 WL 685855, at *1 (Iowa Ct. App. Mar. 11, 2026).

At first, D.L. remained in his mother's custody. But after she tested positive for THC, methamphetamine, and cocaine in May 2025, D.L. was removed from her custody and placed in foster care. The child remained in foster care for the remainder of these proceedings. The State filed a CINA petition shortly after the removal, and in July, the child was adjudicated a CINA.

During visits with the child and his older sibling, the mother overfed the child, ended a visit early, did not come prepared, and brought up topics that were upsetting to the older sibling. Additionally, HHS reported

---

[1] The juvenile court continued the hearing on termination of the father's parental rights, so this appeal addresses only the mother's rights.

concerns related to the mother's mental health. For example, when the children were moved to a different foster family, HHS decided to only inform the mother of the new foster parents' first names due to her repeatedly messaging the former foster parents. Reacting to that decision, the mother filed police reports and an Ombudsman's report claiming that HHS was trafficking her children and sent an email to a local news station with the children's photo attached stating they were missing. Many of her messages to the professionals and the foster parents were nonsensical and incoherent.

Throughout these proceedings, the mother's mental health remained a concern. For a while, she attended therapy only once a month. In July, the mother revoked her healthcare releases, preventing HHS from monitoring her therapy and medication management. The mother did not provide new medical releases until November, after the permanency hearing.

The child was placed in the current foster home in November; the child remains placed with his older sibling.[2] At the November permanency hearing, the mother testified that she had increased her therapy sessions to eight per month and was continuing to make progress. The mother claimed to have no idea why her patch drug test came back positive for methamphetamine. At the conclusion of the hearing, the juvenile court set the permanency goal as termination of parental rights and noted safety concerns about "the mother's substance abuse, mental health, and individuals that she surrounds herself with."

In December, the State filed a petition to terminate the mother's parental rights, and a termination hearing was held in January 2026. At the

---

[2] The mother gave birth to the child's younger sibling in the winter of 2025. The younger sibling is not involved in these proceedings.

termination hearing, the mother's substance use was discussed. Most recently she had tested positive for methamphetamine in December 2025. When asked about how she was addressing her substance-use issues, the mother replied, "I address them by not using." The mother also remained "unsure" of what caused her positive drug test results and continued to deny substance use.

The HHS social work case manager testified at the hearing that the mother had made positive changes, including finding a new therapist and attending weekly therapy sessions, but prior to November 2025, the mother had not adequately addressed her mental-health concerns. In November, the mother admitted that she was not addressing her trauma in therapy. And the social work case manager remained concerned that the mother did not have enough time to address her significant issues.

The social work case manager also voiced concerns about the mother's inability to ensure her own safety, particularly when interacting with individuals who have caused the mother harm. These concerns echoed those in the HHS termination report to the court, that "[t]here is continued concern about [the mother's] ability to identify safe people and healthy relationships and the impact that could have on [the child] presently or in the future if [the child] were returned to her care."

Concerning the quality of the visitation the mother had with the child, the HHS report noted that the mother had improved by attending regularly and providing adequate activities, but she had not "demonstrate[d] a sustained ability to parent." And the mother had not progressed past once weekly, fully supervised, two-hour visits. The social work case manager testified that termination of the mother's parental rights was in the child's best interests.

The guardian ad litem (GAL) also recommended terminating the mother's parental rights, and the GAL report to the court noted that termination was in the child's best interests. The GAL report also noted concerns about the mother's mental health, opining that "[s]he can appear stable for short periods of time, but within a week or two she is behaving erratically, making false reports, sending nonsensical texts and emails, and not having the ability to adequately or safely care for a child."

In February, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(g) and (h) (2025). The mother appeals.

## II.  Standard of Review.

We review termination of parental rights cases de novo. *In re L.P.*, 32 N.W.3d 804, 812 (Iowa 2026). "As always, our fundamental concern is the child's best interests." *Id.* (citation omitted).

## III.  Analysis.

On appeal, without challenging any of the grounds for termination, the mother argues that termination was not in the child's best interests and briefly argues that she and the child have a "strong bond." The State argues that she has waived her arguments on appeal for failing to apply the facts of the case to the law. First, we address her parent-child bond argument. A parent need not preserve a challenge to the best-interests analysis under Iowa Code section 232.116(2), but a parent is required to preserve arguments

about exceptions to termination under section 232.116(3)[3] for appeal. *In re J.R.*, 20 N.W.3d 839, 842–43 (Iowa Ct. App. 2025) (en banc). Though the juvenile court ruled that none of the exceptions under section 232.116(3) applied, our review of the record shows that the mother never raised the parent-child bond exception below. Because the parent-child bond exception was not raised before the juvenile court, any reference from the mother to this argument on appeal is not preserved for our review. We turn to her best-interests claim.

In the mother's petition on appeal, she only makes a conclusory statement that termination is not in the child's best interests. A petitioner must explain on appeal why they disagree with the juvenile court's ruling by making a legal argument. *See* Iowa Rs. App. P. 6.201(1)(d), .1401—Form 5 at ¶ 10; *see also In re D.C.*, No. 25-0944, 2025 WL 2237952, at *2 (Iowa Ct. App. Aug. 6, 2025) (finding a mother's failure "to reference the record or provide any explanation as to why she disagrees" waived her argument on appeal). Here, generously reading the mother's petition but without undertaking her advocacy work, we elect to address the best-interests issue. *See Ronnfeldt v. Shelby Cnty. Chris A. Myrtue Mem'l Hosp.*, 984 N.W.2d 418, 421 (Iowa 2023) ("We generally will not do a party's work for them, particularly if that

---

[3] Iowa Code section 232.116(3) provides:

The court need not terminate the relationship between the parent and child if the court finds . . . :

. . . .

c. There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.

requires us to assume a partisan role and undertake the party's research and advocacy." (cleaned up)).

In considering the best interests of the child, we must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). When considering the child's long-term and immediate interests, we must "consider[] what the future holds for the child if returned to the parents." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (citation omitted). "When making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." *Id.* (citation omitted).

We commend the mother for increasing her mental-health therapy and the progress she has made, but she has inadequately addressed her mental-health concerns to be a safe parent for the child. Additionally, the mother's history and patterns of becoming involved in unsafe relationships, and her failure to recognize these unsafe relationships, remain a barrier to her ability to become a safe parent. Finally, the mother's recent positive drug test and her lack of accountability for her substance use remains a primary concern for the safety of the child. Because of these ongoing, unaddressed concerns, termination of the mother's rights is in the child's best interests. *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010) ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."). Thus, we affirm the termination of the mother's parental rights.

7

## IV. Conclusion.

Due to the mother's failure to adequately address safety concerns, termination is in the child's best interests, and we affirm.

**AFFIRMED.**